Good morning, Your Honor, and may it please the Court. My name is Paul Hoffman. I'm appearing for the plaintiffs. Judge Wright, in ruling on plaintiff's fee motion on remand from this court's decision in 2013, made a finding that the plaintiffs regularly performed once and billed eight times, and therefore cut the That finding is without any basis in the record. The plaintiffs never double billed, triple billed, I'm not sure what eight times they double billed. There's just no evidence of that, and that's shown by the fee records themselves. It's shown by the fact that the defendants have never claimed double billing, and yet they had an expert go through the plaintiff's fee records, both in the first motion and the second motion, never claimed that that had happened even once, and it never happened even once. It has been categorically denied and explained by plaintiffs. Judge Wright came to that conclusion by misreading a snippet from a declaration which was actually saying the opposite and explaining the opposite in the sense that what happened in the first fee... Let me ask you this, like say for example taking the deposition that he said was counted eight times or something like that. It wasn't. So is that at best ambiguous in the record? No. There's no ambiguity at all, your honor. I mean, there's just this ambiguity. We put our time records, the first motion, by attorney. Judge Wright criticized that and said why don't you, wanted us to do it by cases. So the second time we turned it around and we allocated time by cases. And one of the things that the declaration was explaining was that there was some time that was really allocable to all the cases, and not that it was... you know, that we did it for each case, but that time recorded in a certain case was actually relevant to all the cases. My time is a good example. I spent 57 hours, I had 57 hours in this case. And one of the things that the was entirely on, or virtually entirely, on the Monell issues that were in every one of the cases. So let me ask you this. I'm just trying to sort of piece all this together. The Defense Council, who would be the appellees here, they had 17,000 hours of work done in this case. And with the fees that after Judge Wright reduced it by 87 percent or whatever, how many hours did that mean that your side spent? I think it's a little over 500. And this is a case, by the way, with 53 depositions where we were served with 1,800 interrogatories and over 1,200 requests for production. I thought the language in the original motion was a bit ambiguous about how you were counting time. But then you submitted a motion to reconsider. Did the court address the motion to reconsider? Yes, on the merits. And said... And just stood by his... But you didn't actually appear and argue again. You just made the motion. Did you appear again? There was only one argument. That was the first time around. And actually, in that argument, the judge never said there was double billing so that it could be explained. I don't know how to assure the court any more than I can. The Pelley's are arguing here before us that they don't seem to argue that you're double billing. But they're arguing that there's other bases in the record to reduce the fees. And they go through their various ideas, including that the district court could have denied the entire motion for failure to comply with Local Rule 7-3. And he didn't. And there are disputes in the record about whether there was a meet and confer. There are disputes about all those things. Judge Wright could have dealt with all those things. In fact, this court told him to deal with all those things in the first decision. In the first decision, he tried to explain those things and took across-the-board cuts that were not well explained. It can't be the case that there would be an alternative ground where there would be absolutely no explanation for why the cut would be there. I mean, this court said to him, if you want a cut more than 10 percent, you have to give an explanation. And the only thing that he did was misread a declaration without-and I would submit to you, it took me five minutes to figure out that my time wasn't multiplied by eight. The chart-I mean, we have the chart of everybody's hours. You have the original timesheets of everybody's hours. And you have them divided by cases. It's absolutely clear. When you settled the case, what was-tell me what the stipulation was about the attorney's fees. Well, I'm sure my colleagues are hating me for this by now, but when we settled the case, the clients got $500,000 up front. That was paid. The clients have all their money. We made an agreement that we could make a motion for attorney's fees, and we would only ask for up to a million, even though our lodestar was close to double that. In fact, we think it was double that. And we could ask for $25,000, up to $25,000, for the preparation of the attorney's fees. So-and to be honest, I convinced people that they should do that because I said, look, there's no way that-I mean, look at all the time that everybody spent on this case. There's no way this case is going to be reduced below a million dollars. This is just-even a judge that hated us wouldn't do that. And I was wrong. So in your briefs, you were asking for this court to award the fees rather than to remand. But given the factual determination, given that the district court only made a single finding, which was the octuple billing, and we in the prior case had said, you need to go through this factual analysis, how could we-how could this court, even if we agreed with you otherwise, not remand, but actually make those factual determinations ourselves? Well, Your Honor, we have provided the court with cases where it has been done. So the court has the authority to do it, I think. They're somewhat different, though. I agree with that. And here, we expressly said, this is the factual analysis that has to be made before awarding fees. That's what we told the district court. So we're likewise banned by it. Well, I think-I think Your Honor- I mean, a public commissioner can technically do it, I guess, and then they make a recommendation. And Judge Wright- And the court approves that or not. Yes. But I think for-Judge Wright has advanced the ball in one respect, and that is that he found, based on evidence in the record, that our hourly rates were appropriate. And if you put those hourly rates together, even with the defendant's expert, I mean, we're going to be over the million dollars that we can ask for. That's the reason, really. And there's 17,000 hours on one side and 4,000 on another. And I think that, based on the common knowledge of what it takes to litigate and all these depositions, I think that the court, without going out on too big a limb, could give us the maximum that we're entitled to. But if the court feels that's not appropriate, the one thing we would request is that it would be sent down to a different judge. Because it's fairly clear at this point that Judge Wright is not prepared to live by this court's mandate and to treat us fairly. And I think we fit both the bias element and also the unusual circumstances for the reasons we've laid out. And specifically what, on the animus part of it, what specifically from, all right, obviously you were at over 400,000, and then the court sends it back, and then you go, you get halved again. But then tell me what else about the animus. I know that there were things that were stated in the record. Why don't you specifically say what the best argument is for that? Well, Your Honor, I think that the bias argument is based on the fact that from the start, the judge said, you know, it's outrageous that you're asking for more money than your client's got. I'm not going to do that. It took us filing a petition for a writ of mandamus for him to rule to begin with. He then came up with this formula that knocked out all this time without really looking at the time records. Then he's reversed, and he cuts it in half based on just, in all fairness. He thinks you've committed ethical violations as well. And he accuses us. I think he thinks that a law student could do it better than you did it or something like that. Well, Your Honor, I've been doing this work for 40 years, and I think the plaintiffs did a good job in this case and got a good settlement for their clients and did so in a reasonable way. You know, people could disagree with time. I mean, there's always some disagreement about whether something's useful or not. But this was a hard-fought case. It actually led, we believe, and I think it's fair to say that it led to the dismantlement of the Maywood Police Department. Do you want to reserve any time? Yes, Your Honor, I'd like to do that. May I ask a question? I'm sorry. Mr. Hoffman, you mentioned that you spent 57 hours principally on the Monell case. How were those hours reflected in the billing statements? Well, in the first billing statement, they were just, we put my time in. We didn't allocate over cases. In the second version, I think five or so hours were allocated to one case. And the other, the rest of my time, in fact, we took less time. For some reason, they cut me. But the rest of my time was allocated under the Monell column, which is what Mr. Cook was trying to explain in his declaration, that there was a category that we put in for hours that were fairly attributable to all of that. And my time and my associate's time were in that category. In the record, there's a category for time spent on multiple cases, correct? That's correct. And that's where you put most of your time? That's where my time was, yes. Cut across all the cases, right? That's correct. Okay, thanks. Thank you. Thank you. Good morning. Good morning, Your Honors. I'm Richard Simone on behalf of the appellees. This is a court's finding of fact and ruling is not an abuse of discretion. The court, the appellants have argued about the fact that the amount of the record here. One of the problems that was created by this case is the fact that the court only had one motion before it and it was distinctly different from the other two motions. The court's ruling is expressly based on exactly what the motion and the motion supporting declaration say. And the plaintiffs in their appeal have been unable, or at least they did not identify anything in the fee motion that contradicts the district court's ruling. And they don't allege that the record, they say it, but they don't show where in the record the proofs that the same work wasn't billed eight times. I didn't see anything in your brief showing where the same work was billed eight times. And when I went through the record taking time that was billed by a specific lawyer on a specific day, it wasn't billed any additional time. So I didn't really see anything in the record supporting the district court's finding. Wasn't there something that you didn't put in the brief that would support it? Could you cite me two pages in the ER where the same lawyer on the same day billed the same amount of time and it showed up in multiple locations? We did not address it in that manner, Your Honor. Well, but isn't that important? Well, we're relying on what the court's interpretation. But if the court's saying you billed eight times and there's nothing in the record that supports that, how can we uphold that judgment? Part of the problem is the way the records were created. Again, this is the first time that the records were divided by case instead. And the explanation has been that it has to do with the Monel time, but it's not just the Monel time. And the record shows that there were many issues that were common time. And this is from the motion itself. But if the court got to that number by saying they billed eight times, that it was eight-time billing or whatever the court was saying, and you can't show us in the record where it is, and we can't find where it is, how can we uphold what the district court did? We're relying on what the plaintiffs, the appellants, told the court and what their motion says. The motion, it says that all the work for the 12B6 motions, which were early in the case, the June 25, 2010 motions in six of the eight cases, all work related to Monel and supervisor liability work was also billed this way. Even time attributable. The motion was a bit ambiguous, but then they clarified it in the motion to reconsider. But the district court apparently didn't credit that. So it wasn't like they told the district court we billed eight times or anything even close to that. It was just somewhat ambiguous. But then they clarified it in the motion to reconsider. Why doesn't that correct any misunderstanding the district court had? Because the motion for consideration was, what was alleged in the motion for consideration was that the court didn't understand the evidence. And that's exactly what they said. And what Judge Wright came back and said was, the motion for reconsideration, this is not a proper basis for a motion for reconsideration, that the court didn't understand the evidence. It's true, right? The court didn't understand the evidence because there's nothing in the record that shows octuple billing. You haven't identified it to us. That's correct, Your Honor. Mr. Salmon, could you answer? I have a question. I was looking at the records and I think that Judge Wright was saying that if a deposition was taken of one witness and it took three hours to take a deposition, that deposition would appear in all eight cases for three hours. So I traced some depositions, billing in one case and another, and I couldn't find any depositions which were billed in more than one case. Did you find any? No, I think that's something that's already been asked and we did not look for that. But the court, in reviewing the motion, Well, I think Judge Baird just sort of went like this, so I think that's sort of like I rest my case. Well, but the court is allowed to make an across-the-board cut and not to delve into the different areas to review, to look for and try to cut that time. On what basis other than the evidence, counsel? The court cannot just cut because it doesn't like the hair dressing on the counsel. No, it's not based on that, your honor. Well, then what is it based on? It's based upon what the motion itself read and the fact that What about the motion, pardon me, what about the motion tells us we plaintiffs octupled billed? It says it both in the motion and in the supporting declaration. In fact, Give me the citations of the record. The excerpt of record 309 through 312 and also an excerpt of record 715. That's what appears in both the motion and in the supporting declaration by Attorney Cook. The court then applied based on what was represented in the motion. Read me what the admission of the plaintiffs was that is the basis for a finding of octuple billing, please. In the declaration of Mr. Cook at ER 715, he says, in such circumstances, it is reasonable to allocate this time across all cases. The same is true as time spent developing plaintiff's Monell theories of this work was directly relevant to all the cases. So he's talking about some work that is applicable to all cases. And Mr. Hoffman just told us that that went into the multiple case category of billing on the Monell issue. Where is there anything that says we billed depositions eight times? Well, I think also if you look at the motion between the pages. Look at the motion and tell me where it says that. It starts at ER 309 through ER 312 where it explains all the different types of work that was performed and was billed in this manner. It goes on for several pages. And pursuant to what was represented in both the motion and the supporting declaration, the court was appropriate for the court to make under Gates v. Duke Magian, an across-the-board cut. The court spent in part of the... No, the court was wrong and there wasn't octuple billing. I'm sorry, Your Honor? There wasn't octuple billing, was there? And so even though the court concluded that, the court was wrong. But even if the court were wrong, the court's application of the law was appropriate and it was based on what was in the motion. The appellants have said that this was made of whole cloth. It wasn't. It's what appears in the motion. Judge Wright relied upon that and made an appropriate cut based on the complexity. Again, this is not about just the depositions. It's about most of the work in the case was done once and billed many times. Could I direct you to a different question, a different issue, which is assuming we end up disagreeing with you and agree with the appellants that the district court heard in saying there was octuple billing, is there any reason why we shouldn't make that determination ourselves as to what the award is based on the stipulation between the parties as appellants request? Well, there is because for the court to take control over the district court in that manner. There is because we might get it right? I'm sorry? There is because we might get it right and then it wouldn't be appealed again? No, that wouldn't be the reason. The reason would be because it has an effect of sanctioning or censoring the court, the district court by the court taking control. The court has previously expressed... Well, we can send things to an appellate commissioner too and if there are factual findings that need to be made and then the appellate commissioner puts it back to us and then if we didn't agree with it, then we wouldn't sign off on it and we would send it back. So, I mean, essentially there is a mechanism to do it. I think it's clear from the court's order, the district court's order, that Judge Wright saw this one issue and dealt with the one issue and I think at that point he felt it was enough. But he said things, you know, I mean, first off, I sort of took it through. It's a little bit like when you do statutory construction. You're not supposed to reach an absurd result. Some of the things that you have in your backdrop is that there was a stipulation that they could ask for a million dollars in attorney's fees. And then the judge does four hundred and something thousand. It comes up. We say you didn't give adequate reasons. It goes back and then it goes down to two hundred and something thousand dollars. And he says in there things like a law student could have done this or essentially, you know, my grandmother could have done this and my grandmother only has a sixth grade education. And, I mean, and cites ethical things in the saying that they're ethical violations. And the backdrop of that is you can't tell us in the record where there's evidence to support octuple billing, which is what he says his justification is for going down to two hundred and seventeen thousand dollars or whatever it was. None of that makes an error, however. So if we send it back to him again, is it then going to go down to a hundred and twenty-five thousand dollars? Your Honor, you have to recall that this was, there was only one motion. The appellants want to address the fact that there's several motions. The problem is the second motion, there's a second fee motion, which was not even authorized by the court. If Judge Wright had so much animus, he could have just rejected the fee motion. He notes that it was not authorized. But wasn't it directed by the Ninth Circuit of how to calculate the fees? He presumably would not have ignored that decision, giving very specific instructions, which he didn't, in fact, follow. But that was based on the first fee motion and the record that they had at that time. Judge Wright was now faced with a completely different fee motion, different evidence. Wasn't that based on his complaint that the appellant shouldn't have organized the first one by attorney? He said that on the record. Appellants said that that was why they did it. However, they had filed a motion asking to file additional declarations. What they didn't say was they filed a completely different fee motion with completely different evidence, rendering it impossible for Judge Wright to go back to the original one because that was no longer before him. Now he's got, which is what the court had remanded back, was the original motion. It was no longer before Judge Wright. Now it's a brand new motion with brand new evidence. And the appellants are saying, this is how we did it. And he looks at it and he says, well, based on that, this cut is appropriate. He never has to look even deeper than that because they've told him that's what they've done. And when it came up before in the motion for reconsideration, the basis of the motion for reconsideration was inappropriate. It was not a proper basis for relief. The Judge Wright's ruling is based on what appears in the record. It is clear that there, you know, the appellants spent a lot of time talking about what does the word allocate mean. Does it mean divide or does it mean just to appoint certain dollars to certain issues? And the, whether or not it's apportioned does not necessarily, the use of the word apportioned does not necessarily mean it's going to be divided amongst all cases. Judge Wright's decision was not implausible. It was not illogical. It was based on what was provided and it had support in the record. And for those reasons, the- And your best support in the record is what you've cited, that there was octuple billing. You have nothing else? That's your saying is the support, right? Well, the motion, like I said, the motion donates four pages to it. And the declaration as well points time to that. And I think that shows, you know, that was enough for Judge Wright to rely upon. Okay. Do any of you have any additional questions? I do. Well, no, you have 35 seconds. I'm asking my colleagues if they have any additional questions. Thank you. My colleagues don't, so use your last 30 seconds. Thank you, Your Honor. Appellants have made a large issue of the fact of how much time the defense has spent. And the comparison between defendants and plaintiffs in this case. And this court has previously addressed that defendants' time is not a reliable indicator of the time spent by someone seeking fees. And Furlan v. Conrad Credit Corporation. And other cases. That is one of the sole things the appellants look at. They say, well, look how much time they spent. That is not determinative. This case was not what plaintiffs said. The police department was not eradicated because of this case. It was an insurance issue. And only an insurance issue having to do with premiums. That was it. That was the only reason. The plaintiffs did not obtain any kind of relief other than the money that was paid to the defendants. There are so many. There were eight cases, originally nine. It was nominal fees for all parties. Thank you for your arguments. At that time, we have some rebuttal. One reason why it would be feasible for this court to decide the fees. Is that if you took the hourly rates that Judge Wright agreed to based on the evidence. And you apply the hours that their expert found to be appropriate. I believe it is over a million dollars. When you just put those two together. So you have, even on their version of what the appropriate hours are. When you take that with Judge Wright's hourly rates. I think it makes it a relatively easy decision. Where is the, can you give me a site to where appellees, experts indicate appropriate hours? It's extras of record 206 to 243 is where the expert report is. I don't have the actual page site. I'm sorry. So I think that might be of assistance in deciding to take this on yourselves. Rather than avoid, I'd like, we all I think hope to avoid coming back three years from now. Thank you. Thank you both for your argument. This matter will stand submitted.
judges: Callahan, Bea, Ikuta